**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | * | |
| **DOUGLAS J. THATCHER,** | * | **Chapter 7** |
| Debtor | * | |
| | * | **Case No. 1-04-bk-03689MDF** |
| **DOUGLAS J. THATCHER,** | * | |
| Plaintiff | * | |
| | * | |
| vs. | * | **Adv. No. 1-04-ap-00252** |
| | * | |
| **INTERNAL REVENUE SERVICE,** | * | |
| Defendant | * | |
| | * | |

## OPINION

### Procedural History and Factual Background

Before me is the complaint of Douglas J. Thatcher ("Debtor") to determine the dischargeability of a debt to the Internal Revenue Service ("IRS"). The debt at issue arises from Debtor's alleged "responsible person" liability for unpaid trust fund taxes of C&M Catering ("C&M"), his former employer.[1]

In addition to the catering business, C&M operated a restaurant called "Casey's Clubhouse," which was located on a golf course in Millersville, Pennsylvania. On July 1, 2001, Debtor was hired by the President of C&M, Mike Casey ("Casey"), to help manage the restaurant. Specifically, Debtor was hired to develop a new menu, obtain new vendors and customers, and control food costs. Debtor was responsible for opening the restaurant each day, managing its operations, and supervising approximately twenty employees. Debtor had authority to hire new employees, and did

---

[1]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(I) and (O). This Opinion constitutes the findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052.

1

so on several occasions, although the customary practice was for Debtor and Casey to make hiring decisions jointly. Debtor did not have formal signatory authority on C&M's bank account, but he was authorized by Casey to sign checks, and the checks he signed were honored by the bank. In 2001 and 2002, Debtor signed more than 150 checks totaling more than $60,000.00, including payments to vendors and employees, as well as checks made payable to cash and to Casey.

Debtor also had payroll related duties. Each week, Debtor calculated the hours worked by individual employees and forwarded the information to C&M's accountant, Deborah Carr ("Carr").[2] With the information provided by the Debtor, Carr calculated the amounts to be paid to each employee and the amounts to be withheld from his or her wages. Carr then would print payroll checks for Casey's signature. Debtor testified that on several occasions, he received envelopes from Carr that contained payroll checks and payroll tax forms. Debtor signed payroll checks when Casey was not available. Each quarter, Carr prepared a completed "941" form for Casey's signature. When a "941" form was delivered at the time Debtor was in the restaurant, he would inform Casey verbally that the payroll checks and tax forms had arrived. For the period ending September 30, 2001, Debtor signed the "941" return prepared by Carr as well as the check for a partial payment of the third quarter withholding taxes. Although he remitted a $66.00 payment to the IRS, the tax due as stated on the return was $6,520.00. Debtor testified that he did not sign any other federal tax returns while employed by C&M, which was not challenged by the IRS. For the third quarter of 2001, Debtor signed checks for withholding tax payments to the Pennsylvania Department of Revenue and the Lancaster County Tax Collection Bureau. Prior to being employed by C&M,

---

[2]The record is not clear as to whether Debtor performed this function for all C&M employees or only for those who worked under his supervision at the restaurant.

2

Debtor owned and operated a restaurant known as "DJ's Hideaway," where he was responsible for filing payroll tax returns on behalf of the business.

Debtor and Casey shared a desk in an "office" located in a storage area in the basement of the restaurant. This shared office arrangement afforded Debtor access to C&M's mail, deposit slips, invoices, checkbooks and bank statements. In the office were folders for various categories of invoices and account statements. Debtor occasionally opened the mail of the restaurant and placed any bills or statements received into the appropriate folder. Debtor wrote checks from C&M's bank account to pay invoices or paid vendors in cash who required COD payment. For other bills, Casey alone or Debtor and Casey jointly would decide whether payment to a vender would or would not be made.

Shortly after commencing employment at Casey's Clubhouse, Debtor became aware that the restaurant was having cash flow problems. Debtor withheld payments to creditors on an average of twelve times a month. On at least one occasion, Casey asked Debtor not to cash his paycheck for a week so that there would be adequate funds in the account to cover the paychecks of other employees. If requested to delay cashing his paycheck, Debtor would comply with the request. During one period in which cash was particularly tight, Debtor loaned C&M $6,000.00 to cover current expenses. Debtor met occasionally with Casey to discuss pricing, strategies to increase revenue and C&M's cash flow problems. When Debtor became aware that C&M was delinquent on rent payments, Debtor discussed with Casey what invoices would not be paid in order to accumulate sufficient funds to pay C&M's landlord. Debtor testified that he was unaware of whether C&M had sufficient funds to cover checks when he wrote them and that he would withhold payments to some vendors to pay others.

3

Pursuant to 26 U.S.C. §6672, the Internal Revenue Service assessed trust fund recovery penalties against Debtor on account of C&M's failure to pay withholding taxes from the wages of its employees during the fourth quarter of 2000, all four quarters of 2001, and the first three quarters of 2002. On September 15, 2003, Debtor was notified that he was being charged penalties for failing to pay withholding taxes for the quarters for which an assessment had been issued. On June 16, 2004, Debtor filed a petition under Chapter 7. In his schedules, Debtor reported as a disputed claim "941" employment taxes in the amount fo $47,806.78. Thereafter, Debtor filed a complaint to determine the dischargeability of the tax obligations. After Debtor's motion for summary judgment was denied, a hearing on the matter was held on August 25, 2005.

### Discussion

The Internal Revenue Code ("IRC") requires employers to withhold from the wages of their employees certain "trust fund taxes." 26 U.S.C. §§ 3102, 3402 and 7501. Section 6672(a) of the IRC provides that:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. §6672(a).

Under this provision, a "person" is defined as "an officer or employee of a corporation . . . under a duty to perform the act in respect to which the violation occurs." 26 U.S.C. § 6671(b). This definition is broad and includes anyone who is "required to collect, truthfully account for or pay over any tax due to the United States." *United States v. Carrigan*, 31 F.3d 130, 133 (3d Cir. 1994). After the IRS makes an assessment, the burden shifts to the assessed party to show that the

4

assessment is incorrect and that the debtor is not a "responsible person" or that he did not willfully fail to pay the tax. *Brounstein v. United States,* 979 F.2d 952, 954 (3ʳᵈ Cir. 1992);*Psaty v. United States,* 442 F.2d 1154, 1160 (3d Cir.1971). "If the taxpayer offers evidence that the determination was incorrect and the Commissioner offers no evidence to support the assessment, the taxpayer will have met his ultimate burden 'unless such evidence is specifically rejected as improbable, unreasonable, or questionable.'" *Id.* A taxpayer may prevail in a tax refund case by showing that the assessment is a "naked assessment without any foundation whatsoever . . . ." *United States v. Janis,* 428 U.S. 433, 442, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). An assessment is "naked" and "beyond saving" when "the records supporting an assessment are excluded from evidence, . . . or are nonexistent, . . . so that the basis upon which an assessment is calculated is beyond the knowledge of the court." *Greco v. U.S.,* 380 F.Supp.2d 598, 611 (M.D. Pa. 2005) (citing, *United States v. Schroeder,* 900 F.2d 1144, 1149 (7th Cir.1990)).

After the establishment of a proper assessment, the test to determine liability under Section 6672 rests on a showing of two factors: "(1) the individual must be a 'responsible person,' and (2) his or her failure to pay the tax must be 'willful.'" *United States v. Mitchell*, 82 Fed. Appx. 781, 785 (3d Cir. 2003). *See also Greenberg v. United States*, 46 F.3d 239, 242 (3d Cir. 1994). The burden on the taxpayer to show that he is not a responsible person or that his failure to pay was not willful is not altered because the issue arises in the context of a bankruptcy proceeding. *Raleigh v. Illinois Department of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

*1. Whether Debtor fits the definition of a responsible person.*

Whether the Debtor is a responsible person is a matter of "status, duty, or authority and not knowledge." *Quattrone Accountants, Inc. v. IRS,* 895 F.2d 921, 927 (3d Cir. 1990). There may be

5

several individuals within a single business who qualify as responsible persons under the IRC. *Id.*

The Third Circuit recognizes the following factors as indicia of responsibility:

> (1) contents of the corporate bylaws; (2) ability to sign checks on the company's bank account; (3) signature on the employer's federal quarterly and other tax returns; (4) payment of other creditors in lieu of the United States; (5) identity of officers, directors, and principal stockholders in the firm; (6) identity of individuals in charge of hiring and discharging employees; and (7) identity of individuals in charge of the firm's financial affairs.

*Greenberg,* 46 F.3d at 243; *Carrigan,* 31 F.3d at 133*; see also In re Treacy,* 255 B.R. 656, 663 (Bankr. E.D. Pa. 2000). An employee must have "significant" control over company finances in order to be considered a responsible person. *Greenberg*, 46 F.3d at 243. But an employee's control of a company's finances is not rendered "insignificant" simply because he has been instructed by his superiors not to pay withholding taxes. *Id.* 46 F.3d at 243-44. It follows that an employee's control of finances is not rendered "insignificant" simply because he withholds payments to certain vendors on the instructions of his superior. The question of control over finances must be answered in light of the totality of the circumstances; no single factor, or the absence thereof, is determinative. *Fiataruolo v. United States,* 8 F.3d 930, 939 (2nd Cir.1993).

In the instant case, we do not have a copy of C&M's corporate bylaws, but it is clear that Debtor exercised significant control over several financial aspects of the company. He had the ability to sign checks on C&M's bank account. While he was not formally designated as a signatory, he clearly had the "ability" – in terms of the permission of the business owner – to write checks to pay employee wages and vendor invoices. Further, the checks he signed were honored by the bank. *See In re Thomas*, 187 B.R. 471 (Bankr. E.D. Pa. 1995) (debtor who signed checks without being authorized signor found to be responsible person). Payroll checks, "941" tax forms, and payroll withholding checks generally were prepared by Carr and signed by Casey, but for the third quarter

of 2001, Debtor signed the federal, state and local tax withholding forms and signed checks for payroll withholding payments. Generally, Debtor did not have exclusive authority regarding C&M's financial affairs. However, exclusive authority is not the benchmark for responsible person liability, "significant" authority is the applicable standard. *Brounstein*, 979 F.2d at 954; *Quattrone*, 895 F.2d at 927; *In re Abel,* 200 B.R. 816, 822 (E.D. Pa. 1996) (debtor's power to write checks and exercise of that authority to pay creditors showed "significant" control over company finances sufficient to prove that debtor was a responsible person.) Debtor assumed primary operational authority each day until approximately 2:00 p.m. His responsibilities included making determinations about which vendors would be paid and which would not. He made disbursements to himself from cash and paid COD vendors from cash. Debtor consulted with Casey on some of the most significant challenges faced by the business – cash flow problems and strategies to increase revenue.

Debtor did not have sole, final authority to hire and fire employees, but he did have the power to hire employees and exercised that authority on several occasions. Cases interpreting *Greenberg* indicate that the ability to either hire or fire, but not necessarily the ability to do both, suggests the degree of control necessary to trigger responsible person liability. *See Greenberg*, 187 B.R. at 476 (debtor had hired "at least one employee'); *see also Siquieros v. U.S.,* 2004 WL 2011367, *9 (W.D.Tex.) (ability to hire or fire employees indicates responsible person status).

The most troubling factor in this analysis is whether Debtor paid other creditors in lieu of the United States. Admittedly, Debtor had no responsibility for making payroll tax calculations and remitting the taxes due to various governmental entities. Carr made these calculations and typically sent the forms and the checks to Casey for execution and filing. Further, Debtor has stated that he was unaware that the taxes were not being paid, although he could have made this determination by

7

reviewing the documents that were available to him. However, after he signed the 2001 third quarter return, which grossly underpaid the taxes due, he either knew or strongly suspected that trust fund taxes were not being remitted.

Reviewing the factors cited by the Third Circuit, I find that Debtor is a responsible person for purposes of liability under Section 6672. He had the ability to sign checks on the company's account, he signed federal, state and local tax returns for one quarter during the time he was employed by C&M, he was partially responsible for hiring and discharging employees, and he assumed partial responsibility for the company's financial affairs. Debtor was not a shareholder or officer of C&M, but the statute explicitly includes employees as a "person" liable under Section 6672(a). 26 U.S.C. § 6672(b).

2. *Whether Debtor "willfully" failed to pay the taxes at issue.*

In addition to finding that an individual is a "responsible person," a court also must determine that the responsible person "willfully" failed to collect, account for, or pay the tax. 26 U.S.C. 6672(a).

> [W]illfulness is a voluntary, conscious and intentional decision to prefer other creditors over the Government. A responsible person acts willfully when he pays other creditors in preference to the IRS knowing that taxes are due, or with reckless disregard for whether taxes have been paid.

*Greenberg*, 46 F.3d at 244 (citations and internal quotations omitted). Payment of other creditors in preference to the IRS may be considered willful if the responsible person knows that taxes are due, or if he demonstrates reckless disregard for whether taxes have been paid. *Brownstein v. United States*, 979 F.2d 952, 955-56 (3d Cir. 1992). Even when a responsible person denies knowledge about unpaid taxes, he may be liable if he has failed "to investigate or correct mismanagement after being notified that withholding taxes have not been paid." *Morgan v. United States,* 937 F.2d 281,

8

286 (5th Cir. 1991). (italics added.) And even more broadly, if a taxpayer "(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily" the reckless disregard standard is met. *United States v. Vespe*, 868 F.2d 1328, 1335 (3rd Cir. 1989) (quoting *Wright v. United States*, 809 F.2d 425, 427 (7th Cir. 1987)); *see also United States v. Carrigan*, 31 F.3d 130, 134 (3d Cir. 1994).

Under *Brounstein* and *Raleigh*, *supra*, it was Debtor's burden to show that he was unaware that C&M's withholding taxes were not being paid. His proof on this issue consists of his own testimony, in which he denies having such knowledge. In his response to interrogatories propounded by the IRS and at trial, Debtor alleged that he was unaware of the unpaid tax liabilities until he was contacted by the IRS in 2003. Debtor's testimony was countered by the IRS with evidence that Debtor signed a check to pay federal withholding taxes for the third quarter of 2001. If he had examined the accompanying return, it clearly would have demonstrated that the remittance was insufficient to pay the tax due. While Debtor's signature may or may not have been on the return that accompanied the check,[3] the Court is not convinced that Debtor wrote the check without looking at the return.[4] Thus, I conclude that for the third quarter of 2001, Debtor remitted payment to the IRS for quarterly withholding taxes either aware that the check was insufficient to cover the

---

[3]C&M's 941 form for the third quarter of 2001 was not put into evidence at the hearing because the IRS lost it while investigating the case. Debtor denies having signed the return, but the notes of the IRS revenue officer assigned to Debtor's case indicate that he did. Debtor admitted that he signed the check that accompanied the return and signed other checks for withholding taxes remitted to the Lancaster County Tax Collection Bureau and the Pennsylvania Department of Revenue (Transcript at 43-44).

[4]Debtor admitted at deposition (which was read into the record at trial) that on four occasions he received from the accountant an envelope that contained payroll checks and 940 and 941 forms. (Transcript at 40-42.)

9

amount due or in reckless disregard of whether taxes had been paid in full.

A comparison of the facts in the within case with the factual findings in *Abel v. United States*, 200 B.R. 816 (E.D. Pa 1996) is instructive. In *Abel*, the bankruptcy court determined that the debtor was liable under Section 6672 for unpaid withholding taxes because he paid other creditors while he was aware that the company had financial problems, and he did not investigate whether taxes had been paid, although he had access to the company's books and records. The district court reversed, holding that the record supported these factual findings, but that the findings only established simple negligence. *Id*. at 824. The district court observed that the debtor was not involved in preparing tax returns, signed only a few checks, and performed most of his work outside the office. Although evidence was introduced that the debtor signed one tax return, through other testimony the debtor established that the signature was a forgery. Further, there was no evidence that the debtor in *Abel* had knowledge of any past tax problems or any reason to suspect that the company's taxes were not being paid. The district court observed that "[i]f a taxpayer has knowledge of past tax problems, or has reason to believe that the person in charge of paying the taxes is not trustworthy, his actions rise to the level of recklessness more quickly when the company experiences financial problems, or other warning signs arise that suggest unpaid tax liability." *Id*. (citations omitted).

In the instant case, no direct evidence was presented that Debtor knew of C&M's withholding tax problems prior to the filing of the third quarter return in October 2001. Based upon Debtor's general knowledge of C&M's financial difficulties, the IRS asks this Court to infer that Debtor must have known that the company was not paying taxes to the IRS throughout the period of his employment. However, there is inadequate evidence to support this inference. Debtor

10

provided credible testimony that the only creditors he knew were not being paid were trade vendors. Debtor testified, and the IRS did not refute, that he and Casey never discussed the payment of taxes.[5] Applying the same test used by the Third Circuit in *Quattrone*, 895 F.2d at 927, the Seventh Circuit held that "knowledge of financial distress, without more, does not equate to knowledge that [an entity is] not meeting its tax obligations. *United States v. Running*, 7 F.3d 1293, 1299 (7th Cir. 1999).

The facts present in this case closely parallel the facts in *Abel* until C&M filed the 2001 third quarter return. Until October 2001, Debtor knew of C&M's financial distress, but he was unaware that withholding taxes were not being paid. After he signed the check for the partial payment of third quarter taxes, however, his eyes should have been opened. From this point forward, Debtor knew, or should have known, that taxes were not being paid in full.

The IRS suggests that since Debtor had previously owned his own business in which he paid withholding taxes for employees, Debtor generally was aware of withholding requirements. Although his prior experience standing alone does not establish that he knew that taxes were not being paid, when coupled with the act of signing the C&M check for the partial payment of the third quarter taxes and the probable signing of the tax return, his claim of ignorance is not credible.

In its Conclusions of Law, the IRS concedes that Debtor is only liable under Section 6672 for those quarters during which he was employed by C&M. Thus, the IRS concedes that Debtor is not responsible for trust fund taxes that accrued in the fourth quarter of 2000 and the first quarter of 2001. The IRS indicates that the assessments for those quarters will be abated. The ending dates of the remaining quarters for which the IRS seeks a responsible person assessment against Debtor are: June 30, 2001; September 30, 2001; December 31, 2001; March 31, 2002; June 30, 2002; and

---

[5]The IRS did not call Casey as a witness, either in its case in chief or in rebuttal.

11

September 30, 2002. Debtor became the manager of Casey's Clubhouse on July 1, 2001. As the IRS stated in its Conclusions of Law, taxes should have been remitted with each payroll. Therefore, withholdings for all payroll checks distributed during the second quarter of 2001 should have been made before Debtor was employed. Further, a review of the list of checks signed by Debtor, which was submitted in support of the IRS's objection to Debtor's motion for summary judgment, reveals that Debtor did not sign a check on behalf of C&M until August 18, 2001, two weeks after the payroll tax return for the second quarter was due. Insufficient evidence was presented that Debtor otherwise had other information that would have alerted him that withholding taxes were not being paid. I find that although Debtor was aware of C&M's financial difficulties soon after his employment, there is insufficient evidence that he willfully paid other creditors in preference to the IRS knowing that taxes were due, or in reckless disregard of whether taxes were due for the quarter ending June 2001. After October 2001, however, he either was aware that other liabilities were being satisfied in preference to withholding taxes, or he recklessly disregarded this information. In addition to the third quarter of 2001, I find that Debtor was a responsible person who willfully failed to pay federal withholding taxes for the first, second and third quarters of 2002.[6] Based upon this finding, I must hold that the taxes for these quarters are excepted from discharge under Section 523, which includes taxes specified in Section 507(a)(8)(C). This latter section includes "a tax required

---

[6]The certification filed in support of the assessment of taxes for the period ending December 2001 states that no balance is due.

12

to be collected or withheld and for which the debtor is liable in whatever capacity," which includes the responsible person penalty under 26 U.S.C. § 6672.

An appropriate order will be entered.

BY THE COURT,

Bankruptcy Judge

Date:   April 26, 2006

*This document is electronically signed and filed on the same date.*